IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| MICHAEL J. MURPHY<br>906 NE 188th Street<br>Smithville, MO 64089<br><br>Plaintiff,<br><br>v.<br><br>THE LINCOLN NATIONAL LIFE INSURANCE COMPANY a/k/a LINCOLN NATIONAL CORPORATION, LINCOLN FINANCIAL GROUP<br>Serve: Registered Agent<br>Corporation Service Company<br>135 N. Pennsylvania Street – Suite 160<br>Indianapolis, IN 46204<br><br>and<br><br>OPENTEXT, INC. Individually and as duly Appointed Plan Administrator<br>Serve: Registered Agent<br>CSC-Lawyers Incorporating Service Company<br>221 Bolivar Street<br>Jefferson City, MO 65101<br><br>Defendants. | ) | Case No : |

# EXHIBIT C

EDELMAN & THOMPSON, LLC.

Ronald L. Edelman
James T. Thompson
Michael W. Downing
Brendan C. Buckley
Steffanie L. Stracke
Michael B. White
R. Carl Mueller, Jr.

Attorneys at Law
Penntower Office Center
3100 Broadway, Suite 1400
Kansas City, Missouri 64111
(816) 561-3400 • Fax: (816) 561-1664
www.edelmanthompson.com

Keith V. Yarwood
Leah M. Mason
Melissa L. Steed
Brett J. Coppage
John H. Thompson
Elizabeth L.Van Erem
Chad A. Stewart

Of Counsel
John Parisi

June 16, 2022

Laura Bertagnolli
Lincoln Financial Group
8801 Indian Hills Drive
Omaha, NE 68114
Fax: 603-427-1888

**VIA FEDERAL EXPRESS**
**8171 9574 6468**

RE: Deceased: Robert Murphy
Policyholder: Opentext, Inc.
Policy #: SA3-840-444470-01
Claim #: 12375687

Dear Ms. Bertagnolli:

Please be advised that the undersigned represents Mr. Mike Murphy regarding his claim for benefits under the above referenced policy arising out of the accidental death of his brother, Robert Murphy. In that regard, please accept this letter as an appeal of denied Claim No. 12375687, under Policy No. SA3-840-444470-01.

This claim involves the accidental overdose of Mr. Robert Murphy (Mr. Murphy) who was found deceased at his residence on January 13, 2022. Mr. Mike Murphy then submitted a claim for Mr. Murphy's life insurance policy, which was subsequently denied. Below we have set forth the reasons in which that finding was in error.

The denial letter we have received notes that the Accidental Death benefit is not payable under exclusion #2 (intentionally self-inflicted injuries, while sane or insane). In your letter you note that the term "accident" is not defined under the policy, and we are in agreement that it is necessary to review this matter under the federal common law under ERISA. It is then under the two-part test to determine whether a death is accidental that we have different interpretations and conclusions.

"An event is an accident if the decedent did not subjectively expect to suffer 'an injury similar in type or kind to that suffered' and the suppositions underlying that expectation were reasonable. *Wickman v. Nw. Nat. Ins. Co.*, 908 F.2d 1077, 1088 (1st Cir. 1990). If the evidence is insufficient to determine the decedent's subjective expectation, the question is then whether 'a reasonable person, with background and characteristics similar to the insured, would have viewed

the injury as highly likely to occur as a result of the insured's intentional conduct. *Id*. (emphasis added).

As you correctly point out, the first step is to consider the subjective expectations of Mr. Robert Murphy that he would die if he inhaled compressed "air." Your denial letter rests on nothing more than the statement: "We have determined that Mr. Murphy subjectively expected serious bodily injury or death to occur as a result of inhaling difluoroethane." It is Counsels' assumption that this conclusion is based upon a physician's finding of "Mr. Murphy would have known the potential health risks associated with inhaling difluoroethane." However, neither you nor the physician make any attempt to actually ascertain Mr. Murphy's subjective expectation of the consequences of his actions. The letter is devoid of any evidence of Mr. Murphy subjectively expecting to die of an overdose. There is no evidence of his personal characteristics and experiences, that he had suicidal thoughts, made any statements concerning an intent to commit suicide, or had a history of suicidal thoughts or attempts. Further, there is no physical evidence of a suicidal intent such as a suicide note. (See generally, *Yates v. Symetra Life Ins. Co.*, No. 4:19-CV-154 RLW, 2022 WL 19211, at 10 (E.D. Mo. Jan. 3, 2022). In the next sentence you then abandon your position that he had a subjective expectation of death by saying "Even if Mr. Murphy did not expect serious bodily injury or death to occur . . ." Obviously these two stances are in stark contrast of each other, and therefore not the main reason for your denial of this claim.

The second step of this inquiry is then to determine whether or not Mr. Murphy's subjective expectation, that he would not die, was reasonable. "The determination of what suppositions are unreasonable should be made from the perspective of the insured, allowing the insured a great deal of latitude and taking into account the insured's personal characteristics and experiences." *Id*. You note that due to the hazardous labeling, a reasonable person in Mr. Murphy's position would have viewed serious bodily injury or death as highly likely to occur. However, absent from the denial letter is any information on the likelihood of death following the act of inhaling compressed "air." See generally *Jessen v. CIGNA Grp. Ins., 812 F. Supp. 2d 805, 817 (E.D. Mich. 2011)*. While Counsel cannot provide you with the information of the likelihood someone will die after inhaling compressed "air," we have been able to gather statistics regarding drug deaths in the United States.

The National Institute on Drug Abuse reports that "as many as 200 people die from inhalant abuse each year" even though homes will often have a number of substances that can be used as inhalants which are easy-to-obtain. (https://nida.nih.gov/sites/default/files/inhalantsrrs.pdf). In comparison, the number of deaths in 2020 attributable to cocaine was over 19,000, (https://www.statista.com/statistics/611237/cocaine-deaths-us-number/), and the number of deaths attributable to heroin in 2019 was more than 14,000. Surely you can appreciate that both heroin and cocaine are much harder to obtain than a household inhalant which you can acquire at a local grocery store. Yet the number of deaths is dramatically lower for the easy to obtain inhalant. Clearly, after reviewing the death comparisons, a reasonable person cannot come to the conclusion that a death is "highly likely to occur" from inhaling easy-to-obtain inhalants.

In *Jessen*, when seeking to determine whether a reasonable person with Jessen's background and experience would have concluded that Jessen's voluntary use of heroin was highly likely to cause death or serious injury, the court notes: "Jessen's own survival for a period of almost

twenty years of intermittent heroin use is a testament that the use of the drug does not inevitably lead to death." *Id*. However, you provide no information about Mr. Murphy's potential past uses or experiences with compressed "air." The only thing mentioned in the letter is that the investigator reported "numerous bottles of compressed 'air' found at the residence" but does not state whether they were full or empty. If they were full, it could indicate a lack of experience engaging in this activity, but certainly is not dispositive of that conclusion as he could have thrown out past bottles for an unknown period of time. On the other hand, if the bottles were used that is certainly dispositive that Mr. Murphy has done this before without prior consequences. Based on the lack of analysis given, it is impossible to ascertain whether Mr. Robert Murphy's suppositions were unreasonable when he ultimately made the decision to inhale compressed "air."

Ultimately, both parts of the two-part test fail to suggest that this was anything but an accidental overdose. There is no evidence of a subjective intent to overdose, and there is certainly no evidence suggesting that a reasonable person, similarly situated to Mr. Robert Murphy, would have viewed his death as highly likely to occur as a result of his intentional conduct.

**MR. MURPHY DOES NOT MEET EXCLUSION #2**

Since it is clear that this was an accidental overdose, the question then becomes, does Mr. Murphy's death fall into an exclusion. As you noted he was denied under exclusion #2, **concluding that no benefits are payable for any loss that is contributed to or caused by intentionally self-inflicted injuries, while sane or insane**. For the reasons stated below, this was the wrong conclusion.

"Rather than focusing on intentional ingestion of the drug, the inquiry must focus on whether the action is 'purposeful towards a goal.'" *Jessen at*, 820 (citing Andrus, 368 F.Supp.2d at 834). "It is not reasonable to read the self-inflicted-injury exclusion ... to include unintended injuries that result from voluntary engaging in risky behavior. To do so would require reading additional requirements into the plan." *Id*. "[I]t is not sufficient merely that a serious risk was willingly undertaken, so long as injury was not intended and, objectively, was not likely to occur." Id. (citing *Critchlow v. First UNUM Life Ins. Co. of Am.*, 378 F.3d 246, 263 (2d Cir.2004) (concluding that the provision excluding loss resulting from intentionally self-inflicting injuries does not apply to death from autoerotic asphyxiation)).

No argument can be made that Mr. Murphy did not intentionally ingest the inhalant, however, that is not the proper inquiry. The focus, according to *Jessen*, is whether it was his goal to overdose on difluoroethane. This question must be answered in the negative. There is absolutely no evidence that was produced or described by you to suggest that it was Mr. Murphy's goal to injure or kill himself on January 13, 2022. In fact, the evidence suggests the opposite conclusion. If he bottles were empty, it suggests that he has done this before without consequence; but if he had supplies to continue engaging in this activity at a later time, the rational conclusion would be that he did not intend to injure or kill himself on January 13, 2022.

Even though Mr. Robert Murphy intentionally engaged in a risky activity, that in and of itself is simply not enough to deny benefits. Other than conclusory statements alleging that he knew the risks of his actions, you have not provided one piece of evidence suggesting that he intentionally injured or killed himself, or that his injury or death was likely to occur as a result of his actions. Based on the language of the policy, and the caselaw supporting reading the policy as outlined above, Mr. Murphy's benefits were improperly denied.

Very truly yours,

James T. Thompson

JTT/bh